IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES REED<br>13216 Alvin Avenue<br>Garfield Heights, Ohio 44105<br><br>-and-<br><br>RAYVAUGHN MASON<br>13216 Alvin Avenue<br>Garfield Heights, Ohio 44105<br><br>Plaintiffs<br><br>v.<br><br>PAPE MANAGEMENT, INC.<br>C/o William J. Gordon Jr.<br>Statutory Agent<br>30285 Bruce Industrial Pkwy<br>Solon Ohio 44139<br><br>-and-<br><br>BRIDGEPOINT VENTURES , LLC<br>C/O James Pape<br>Statutory Agent<br>6345 Park Point Court<br>Pepper Pike, Ohio 44124<br><br>-and-<br><br>PAPE HOMES, INC.<br>C/O James Pape<br>6345 Park Point Court<br>Pepper Pike, Ohio 44124 | ) | CASE NO.<br><br>JUDGE:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(Jury Demand Endorsed Hereon)** |





-and-

ANDREW JAMES DEVELOPMENT GROUP LLC
C/O James Pape
Statutory Agent
6345 Park Point Court
Pepper Pike, Ohio 44124

-and-

JAMES R. PAPE
2222 Detroit Avenue
Suite 1100
Cleveland, Ohio 44113

Defendants.

Plaintiffs, Rayvaughn Mason and James Reed (collectively, "Plaintiffs"), by and through undersigned counsel, as their Complaint against Defendants state and aver the following:

**PARTIES**

1. Mason is a resident of the city of Garfield Heights, County of Cuyahoga, State of Ohio.
2. Reed is a resident of the city of Garfield Heights, County of Cuyahoga, State of Ohio.
3. Defendant Pape Management Inc. is an Ohio corporation with its principle place of business located in the city of Cleveland, County of Cuyahoga, State of Ohio.
4. Defendant Bridgepoint Ventures, LLC. ("Bridgepoint") is a Delaware limited liability corporation with its principle place of business located in the city of Cleveland, County of Cuyahoga, State of Ohio.
5. Defendant Andrew James Development Group, LLC. ("AJDC") is an Ohio limited liability corporation with its principle place of business located in the city of Cleveland, County of Cuyahoga, State of Ohio.





6. Defendant Pape Homes Inc. is an Ohio corporation with its principle place of business located in the city of Cleveland, County of Cuyahoga, State of Ohio.
7. Defendants Pape Management Inc., Bridgepoint, AJDC, and Pape Homes, Inc. are each a part of one common business enterprise which is owned and operated by Defendant James Pape ("Pape Companies").
8. The Pape Companies are and, at all times hereinafter mentioned, were engaged in related activities performed through unified operation of common control for a common business purpose.
9. At all times hereinafter mentioned, the Pape Companies constituted a single enterprise within the meaning of section 3(r) of the Fair Labor Standards Act.
10. Upon information and belief, Pape is a resident of the state of Ohio.
11. Upon information and belief, Pape is an officer, director, shareholder, principal, member, and or manager of each of the Pape Companies.
12. At all times relevant herein, Pape supervised and/or controlled Plaintiffs' employment with the Pape Companies, and acted directly or indirectly in the interest of the Pape Companies in relation to their employees, and is an employer within the meaning of section 3(d) of the Fair Labor Standards Act.

**JURISDICTION AND VENUE**

13. Jurisdiction is proper over Defendants pursuant to 28 U.S.C. § 1331 in that Plaintiffs are alleging a federal law claim arising under the FLSA, 29 U.S.C. § 201, *et seq*. Thus, this Court has original jurisdiction over the federal law claims asserted in this Complaint under 28 U.S.C. § 1331. Additionally, this Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.



The Employee's Attorney.™



14. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, because it is the district court for the district, division, and county within which the Defendants operate and conduct business.

**FACTS**

15. The Pape Companies are engaged in the business of property development and management.
16. Mason was first hired by AJDC as a laborer in or around June of 2013.
17. Mason was employed by each of the Pape Companies at various times during his employment.
18. Reed was first hired by AJDC and/or Bridgepoint as a laborer in or around October of 2013.
19. Reed was employed by each of the Pape Companies at various times during his employment.
20. As laborers, Reed and Mason's primary job duties consisted of cleaning out properties, rehabilitating properties, performing maintenance on properties, cutting grass, and removing mold from properties.
21. Reed and Mason would generally work twelve hours a day, six days a week.
22. On occasion, Reed and Mason would work seven days a week.
23. As a result of their schedules, Reed and Mason worked an average of 72 to 84 hours a week.
24. The Pape Companies compensated Reed and Mason on a flat rate basis.
25. Reed was promised a flat rate of $125.00 a day.
26. Mason was promised a flat rate of $100.00 a day.
27. Reed and Mason were paid on a semi-monthly basis.
28. Mason was not paid the promised $125.00 per day.
29. Reed was not paid the promised $100.00 per day.
30. At times, Plaintiffs were paid $600.00 or less for a total 168 hours of work, or $3.52 an hour.
31. Plaintiffs were paid less than minimum wage.
32. Plaintiff were not paid overtime for any hours they worked over 40 in a given week.





33. In addition to their salaries, Reed and Mason were each compensated with housing in a single family home owned by the Pape Companies.

34. Mason was provided housing at 3947 East. 176th Street, Cleveland, Ohio 44128 ("Mason Rental Property").

35. Upon information and belief, the Mason Rental Property held a rental value of approximately $897.00 per month, or $224.00 per week.

36. Reed was provided housing at 12106 Lenacrave Avenue, Cleveland, Ohio, 44105 ("Reed Rental Property").

37. Upon information and belief, the Mason Rental Property held a rental value of approximately $800.00 per month, or $200.00 per week.

38. Reed and Mason each complained to Pape about not receiving the amount of pay they were promised or overtime ("Wage and Hour Complaints").

39. In response to the Wage and Hour Complaints, Bridgepoint entered into a contract of employment with Mason and Reed ("Employment Contracts") on January 16, 2015.

40. A true and accurate copy of Mason's Employment Contract is attached hereto as Exhibit "A".

41. Reed is not in possession of his Employment Contract, which is believed to be in the possession of Defendants.

42. With the exception of the described rate of pay, Mason and Reed's Employment Contracts with Bridgepoint are identical in all material respects.

43. Mason's Employment Contract promised Mason a rate of pay of $100.00 per day.

44. Reed's Employment Contract promised Reed a rate of pay of $125.00 per day.

45. The did not and could not excuse Defendants from their obligation to pay Mason and Reed overtime.







46. Subsequent to entering into the Second Employment Contract, Mason and Reed continued to work between 72 and 84 hours a week.

47. Subsequent to entering into the Second Employment Contract, Mason was not paid the $100.00 per day he was contractually entitled to.

48. Subsequent to entering into the Second Employment Contract, Reed was not paid the $125.00 per day he was contractually entitled to.

49. Subsequent to the Second Employment Contracts, Defendants continued to pay Mason and Reed less than the minimum wage.

50. Subsequent to the Second Employment Contracts, Defendants failed to pay Reed and Mason overtime for any hours they worked over 40 in a given week.

51. In or around May of 2015, Reed complained to Pape again about his failure to honor their contracts, and that he was not being paid overtime ("Reed's Second Wage and Hour Complaint").

52. Pape responded to Reed's Second Wage and Hour Complaint by terminating his employment.

53. Pape terminated Reed in order to retaliate against Reed for making protected wage complaints.

54. At all times referenced herein, Reed was on criminal probation.

55. Pape was aware of Reed's criminal probation at time Reed was hired.

56. Shortly after terminating Reed, Pape called Reed's probation officer and falsely claimed that Reed had verbally threatened him ("False Allegations").

57. Pape made the False Allegations with the intent of causing Reed to be arrested.

58. Pape made the False Allegations with the intent of causing Reed to be away from the Reed Rental Property long enough for Pape to have Reed's belongings removed.

59. Pape made the False Allegations against Reed to further retaliate against Reed for making protected wage complaints.





60. As a result of Pape's False Allegations, Reed was automatically incarcerated because of his parole status.
61. As a result of Pape's False Allegations, Reed was incarcerated from approximately May 15, 2015 until May 18, 2015.
62. Reed was never charged with any crime related to the False Allegations.
63. During the weekend of May 15, 2015, Pape ordered Mason to remove Reed's belongings from the Reed Rental Property.
64. Reed's Employment Contract was amongst the belongings that were removed from the Reed Rental Property.
65. Upon information and belief, another tenant moved into the Reed Rental Property during the weekend of May 15, 2015.
66. Pape evicted Reed to further retaliate against Reed for making protected wage complaints.
67. Defendants failed to pay Reed any wages for his last two weeks of work.
68. Defendants failed to pay Reed for his last two weeks of work to further retaliate against Reed for making protected wage complaints.
69. On or around June 3, 2015, Mason complained to Pape about how he and Reed had been treated by Pape.
70. Mason specifically complained to Pape that Reed had been terminated and evicted for complaining about not being paid overtime.
71. Mason specifically complained to Pape that he had not been paid overtime.
72. Mason also complained to Pape about Pape had addressed him and Reed.
73. Pape responded to Mason by stating that he “has no respect“ for Mason and Reed, and he told Mason that he was being terminated because of his complaints.







74. Pape terminated Mason in order to retaliate against Mason for making protected wage complaints.

75. On or around June 5, 2015, Pape evicted Mason from the Mason rental property.

76. Pape evicted Mason to further retaliate against Mason for making protected wage complaints.

77. On or around June 11, 2015, Mason received his final paycheck from Defendants ("Check No. 100071").

78. Mason cashed Check No. 100071.

79. On or around June 17, 2015, Mason learned that Check No. 100071 had been returned unpaid because Pape had placed a "stop payment" on the check.

80. Subsequent to learning that Check No. 100071 had been returned unpaid, Mason called Pape to find out why he had stopped payment on the check.

81. Pape informed Mason that he had stopped payment on Check No. 100071 because he believed Mason had damaged a door on a vehicle owned by Defendants.

82. Mason had not damaged any vehicles owned by Defendants.

83. Pape's proffered reason for failing to pay Mason was a lie.

84. Pape withheld Mason's final paycheck to further retaliate against Mason for making protected wage complaints.

85. As a result of Defendants' shocking and outrageous conduct, Reed and Mason have suffered severe emotional distress.

86. As a direct and proximate cause of Defendants' conduct, Reed and Mason have suffered and will continue to suffer damages.

**COUNT I: FAILURE TO PAY MINIMUM WAGE**

87. Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.





88. During Plaintiffs' respective dates of employment with The Pape Companies, Defendants failed to pay them the proper minimum wage rate as prescribed by R.C. 4111.01, *et seq*.

89. As a result, Defendants failed to pay Plaintiffs at a wage rate required under R.C. § 4111.02 and/or 29 U.S.C. § 206.

90. As a direct and proximate cause of Defendants' conduct, Plaintiffs suffered damages.

91. Defendants willfully and/or intentionally violated R.C. § 4111.02 and 29 U.S.C. § 206.

92. Defendants acted in bad faith in violating R.C. § 4111.02 and 29 U.S.C. § 206.

93. As a direct and proximate cause of Defendants' conduct, pursuant to R.C. § 4111.02, Defendants are liable to Plaintiffs for the full amount of the required minimum wage rate.

94. As a direct and proximate cause of Defendants' conduct, pursuant to 29 U.S.C. § 216(b), Defendants are liable to Plaintiffs for the full amount of the required minimum wage rate, an additional equal amount as liquidated damages as well as costs and reasonable attorney fees.

**COUNT II: FAILURE TO PAY OVERTIME COMPENSATION**

95. Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

96. Plaintiffs each worked over 40 hours per week during their employment with Defendants.

97. Defendants did not pay Plaintiffs overtime wages for hours worked over 40 per week.

98. Pursuant to R.C. § 4111.03(A) and 29 U.S.C. § 207, an employer must pay a non-exempt employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of 40 hours in one work week.

99. Plaintiffs were non-exempt employees for purposes of R.C. § 4111.03(A) and 29 U.S.C. § 207.

100. As a direct and proximate cause of Defendants' failure to pay Plaintiffs their lawfully earned overtime wages, Plaintiffs suffered damages.

101. Defendants willfully and/or intentionally violated R.C. § 4111.03(A) and 29 U.S.C. § 207.





102. Defendants acted in bad faith in violating R.C. § 4111.03(A) and 29 U.S.C. § 207.

103. As a direct and proximate cause of Defendants' failure to pay Plaintiffs their lawfully earned overtime wages, pursuant to R.C. § 4111.10(A), Defendants are liable to Plaintiffs for the full amount of the overtime wage rate, and for costs and reasonable attorneys' fees as may be allowed by the Court.

104. As a direct and proximate cause of Defendants' failure to pay Plaintiffs their lawfully earned overtime wages, pursuant to 29 U.S.C. § 216(b), Defendants are liable to Plaintiffs for the full amount of the overtime wage rate, an additional equal amount as liquidated damages as well as costs and reasonable attorney fees.

**COUNT III: UNLAWFUL RETALIATION BASED ON PROTECTED WAGE COMPLAINTS.**

105. Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

106. Throughout Plaintiffs' employment, Plaintiffs made complaints to Defendants regarding their failure to pay overtime compensation.

107. Following Plaintiffs' complaints and as a proximate cause of the complaints, Defendants retaliated against Plaintiffs.

108. Pursuant to 29 U.S.C. § 215, no employer shall discharge or in any other manner discriminate against any employee because the employee has made any complaint to the employee's employer, or to the director, that the employee has not been paid wages in accordance with the overtime compensation provisions of 29 U.S.C. § 201 *et seq.*

109. Defendants' act of terminating Mason and Reed from their employment constituted a retaliatory discharge in violation of 29 U.S.C. § 215.

110. Pape's act of making the False Allegations against Reed constituted a retaliatory act in violation of 29 U.S.C. § 215.

111. Defendants' act of evicting Mason and Reed constituted a retaliatory act in violation of 29 U.S.C. § 215.

112. Defendants' failure to pay Reed for his last two weeks of employment constituted a retaliatory act in violation of 29 U.S.C. § 215.

113. Defendants' stopping payment on Mason final paycheck constituted a retaliatory act in violation of 29 U.S.C. § 215.

114. As a direct and proximate cause of Defendants' retaliatory conduct, Mason and Reed suffered and will continue to suffer damages.

**COUNT IV: BREACH OF CONTRACT**

108. Plaintiffs restate each and every prior paragraph of this complaint, as if it were fully restated herein.

109. Under Reed's Employment Contract, Pape Management Inc. was obligated to pay Reed a base rate of $125.00 per day that he worked.

110. Under Mason's Employment Contract, Pape Management Inc. was obligated to pay Mason a base rate $100.00 per day that he worked.

111. Pape Management Inc. breached its contractual obligations to Mason and Reed.

112. Mason and Reed sustained damages as a direct and proximate result of Pape Management Inc's breach of contract.

**COUNT V: UNJUST ENRICHMENT**

113. Plaintiffs restate each and every prior paragraph of this complaint, as if it were fully restated herein.

114. During their respective periods of employment, Mason and Reed each worked six to seven days a week.





115. Pape Management Inc. acknowledged, accepted and benefited from the value provided by Mason and Reed.

116. Pursuant to the their respective Employment Contracts, Mason and Reed expected to receive a minimum flat rate plus applicable overtime.

117. Pape Management Inc. failed to pay Mason and Reed the promised daily flat rate for all days worked.

118. It would be inequitable for Pape Management Inc. to enjoy the benefit of the value provided by Mason and Reed without compensating them as agreed under their respective Employment Contracts.

**COUNT VII: FRAUD**

119. Plaintiffs restate each and every prior paragraph of this complaint, as if it were fully restated herein.

120. Pape Management Inc. represented and promised to Mason and Reed that they would receive a guaranteed flat rate of pay per day worked, plus overtime.

121. Pape Management Inc.'s representations to Mason and Reed were false, and Pape Management Inc. knew or should have known they were false.

122. Pape Management Inc. intentionally and knowingly deceived Mason and Reed, with actual malice, in that Pape Management Inc. never intended to pay Mason and Reed the daily flat rates promised or overtime.

123. The representation made by Pape Management Inc. was as to an existing material fact, upon which Pape Management Inc. intended Mason and Reed to rely.

124. Mason and Reed justifiably relied on Pape Management Inc.'s representations.

125. Pape Management Inc. failed to pay Mason and Reed for all days worked





126. Mason and Reed sustained damages as a direct and proximate result of Defendants' fraudulent conduct.

**COUNT VIII: DEFAMATION PER SE**

115. Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

116. By making the False Allegations against Reed, Pape has published to certain third parties false and disparaging comments regarding Reed.

117. Specifically, Pape stated to Reed's probation office and police that Reed threatened him.

118. Pape's statements about Reed were false when he made them, and were made by Pape with knowledge of their falsity.

119. Pape's statements constitute defamation per se because they reflected upon the character of Reed by bringing him into ridicule, hatred, or contempt.

120. Reed was arrested and incarcerated as a result of Pape's defamatory statements.

121. As a direct and proximate cause of Pape's conduct, Reed suffered and will continue to suffer damages.

**COUNT VIII: FAILURE TO PAY WAGES IN VIOLATION OF R.C. § 4113.15**

122. Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

123. Pursuant to R.C. § 4113.15 (A), "[i]f at any time of payment an employee is absent from his regular place of labor and does not receive his wages through an authorized representative, such person shall be entitled to said payment at any time thereafter upon demand upon the proper paymaster at the place where such wages are usually paid and where such pay is due."

124. Mason and Reed each demanded that Defendants pay them their wages through the end of their employment.







125. Defendants refused to pay Mason or Reed for their final two weeks of work.

126. Defendants' conduct violated R.C. §4113.15.

127. As a direct and proximate cause of Defendant's conduct, pursuant to R.C. § 4113.15(B), Defendants are liable to Mason and Reed for their unpaid wages, and an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.

**COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

128. Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

129. Defendants intended to cause Plaintiffs emotional distress, or knew that their acts or omissions would result in serious emotional distress to Plaintiffs.

130. Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

131. As a direct and proximate cause of Defendants' acts and omissions as set forth above, Plaintiffs has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

132. As a direct and proximate cause of Defendants' conduct and the resulting emotional distress, Plaintiffs suffered and will continue to suffer damages.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs Rayvaugn Mason and James Reed demand from Defendants the following:

(a) An award against each Defendant of compensatory and monetary damages to compensate Mason and Reed for unpaid overtime compensation, unpaid wages, back pay, front pay,





physical injury, physical sickness, and other consequential and/or liquidated damages, in an amount in excess of $25,000 per claim to be proven at trial;

(b) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(c) An award of reasonable attorneys fees and non-taxable costs for Mason and Reeds' claims as allowable under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiffs*

**JURY DEMAND**

Plaintiffs RayVaugn Mason and James Reed demand a trial by jury by the maximum number of jurors permitted.

*s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**



