IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES REED, *et al.*, | ) | CASE NO. 1:16CV305 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| PAPE MANAGEMENT INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |

Plaintiffs James Reed and Rayvaughn Mason ("Plaintiffs") were employed as manual laborers by Defendants, property management companies and personnel, to perform upkeep on Defendants' properties.[1]  Plaintiffs each lived in a house owned by Defendants.  As part of their compensation Plaintiffs paid rent at a reduced rate, which was deducted from their paychecks.  After Plaintiffs separated from their employment, they filed this action bringing claims under the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act ("OMWSA") and the Ohio Prompt Pay Act ("OPPA"), alleging that Defendants failed to properly pay them and retaliated against them when they complained that their wages had not been properly paid.  Doc. 32.  Defendants' Answer included eight state law counterclaims alleging that Plaintiffs: breached their tenancy agreement when, after their employment ended, they failed to return the houses to Defendants in good condition and failed to pay rent; intentionally or negligently

---

[1] "Defendants" consist of James Pape and the following entities that Plaintiffs allege are owned and operated by him: Pape Management, Inc., Bridgepoint Ventures, LLC, Andrew James Development Group, LLC, and Pape Homes, Inc.  Doc. 32, pp. 1-2, ¶¶ 3-11.  Defendants deny that these entities are related and/or owned and operated by James Pape in the manner in which Plaintiffs allege.  Doc. 33, p. 2, ¶¶ 7-9.  For convenience, the Court refers to these Defendants generally as "Defendants."

1

damaged the properties; and committed criminal acts against the properties and Defendant James Pape. Doc. 33.

Plaintiffs filed a Motion to Dismiss Defendants' Counterclaims for Lack of Jurisdiction under Fed. R. Civ. P. 12(b)(1), arguing that the Court lacks subject matter jurisdiction over Defendants' counterclaims because the counterclaims are permissive, not compulsory, claims and that the Court should decline to exercise supplemental jurisdiction over the counterclaims.[2] Doc. 34. Defendants filed an opposition brief in which they argue that their counterclaims are compulsory; they also urge the Court to exercise supplemental jurisdiction over the counterclaims if the Court finds them to be permissive. Doc. 36. This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. Doc. 24. For the reasons explained below, the Court finds that all eight of Defendants' counterclaims are permissive, not compulsory, and declines to exercise supplemental jurisdiction over them. As a result, Defendants' counterclaims are dismissed without prejudice.

## I. Background[3]

### A. Facts according to Plaintiffs

Plaintiffs were hired by Defendants as laborers to perform upkeep on properties owned and managed by Defendants. Doc. 32, ¶¶17-20. Plaintiffs generally worked 12 hours a day 6 days a week and occasionally worked 7 days a week. *Id*. ¶¶21, 22. They averaged 72 to 84 hours a week. *Id*. ¶23. Reed was promised $125.00 per day and Mason was promised $100.00

---

[2] Plaintiffs' motion also seeks to dismiss two counterclaims for failing to state a claim under Fed. R. Civ. P. 12(b)(6) and challenge Defendants' standing to bring four of the counterclaims. Doc. 34-1, pp. 19-24. Because the Court decides Plaintiffs' motion based on subject matter jurisdiction, it does not consider these additional issues raised by Plaintiffs.

[3] In their Answer, Defendants deny many of the allegations in Plaintiffs' Amended Complaint. For purposes of establishing background facts, the Court relies upon the facts alleged in Plaintiffs' Amended Complaint and in Defendants' counterclaims and materials in support of its opposition brief.

per day. *Id.* ¶¶28, 29. As part of their salaries, Plaintiffs paid reduced rent in houses owned by Defendants, which was taken out of their paychecks. *Id.* ¶33; Doc. 34-1, p. 8.

Plaintiffs allege that they were not paid their promised day rate, were not paid overtime, and were paid less than minimum wage. Doc. 32, ¶¶28, 29, 31, 32. They complained to Defendant James Pape ("Pape") that they were not paid their promised day rate or overtime. *Id.* ¶38. When Reed complained again to Pape about his day rate and lack of overtime pay, Pape fired Reed. *Id.* ¶39, 40. Reed alleges that Pape did not pay him for his last two weeks of work. *Id.* ¶43.

Shortly thereafter, Mason complained to Pape about how Pape treated Reed and accused Pape of terminating Reed for Reed's complaints about not being paid overtime. *Id.* ¶¶44, 45. Mason also complained to Pape that he had not been paid overtime. *Id.* ¶46. As a result of Mason's complaints, Pape terminated Mason. *Id.* ¶¶47, 48. Mason received his final paycheck from Pape, but Pape thereafter stopped payment on the check in further retaliation for Mason's complaints. *Id.* ¶¶49-52.

Plaintiffs brought this suit against Defendants alleging Defendants failed to pay them minimum wage, a violation of R.C. § 4111.01, *et seq.* and 29 U.S.C. § 206; failed to pay overtime in violation of R.C. § 4111.03 and 29 U.C.C. §§ 207, 216; retaliated against them in violation of 29 U.S.C. § 215; and failed to promptly pay them in violation of R.C. § 4113.15. Doc. 32, pp. 5-8.

### B. Facts according to Defendants

Defendants agree that they employed Plaintiffs; assert that Reed and Mason were paid at the rate of $125/day and $100/day, respectively; agree that Defendants provided housing to Plaintiffs at a reduced rate as part of Plaintiffs' compensation; and agree that Plaintiffs' rent was

3

deducted from their pay. Doc. 33, ¶¶5, 13, 25, 26; Doc. 36, p. 7. Defendants disagree as to why they terminated Reed, explaining that Reed was terminated because of "uncontrollable outbursts of aggression and threats to other employees of Pape Management." *Id.*; Doc. 36-1, ¶6. Around the same time that Reed was terminated, Mason, Reed's nephew, failed to show up for work, thereby "abandon[ing] his employment" with Defendants. *Id.* ¶8, Doc. 36, p. 8. Reed contacted Pape and threatened him with "serious physical harm and death." Doc. 33, ¶43. Pape was informed by another person that Reed was armed and looking for Pape. *Id.* ¶44. Pape contacted Reed's parole officer and Reed was detained. *Id.* ¶45.

Shortly after Plaintiffs' employment with Defendants ceased, Mason and his family removed Reed's belongings from the house Reed inhabited, causing damage to the property when they did so. Doc. 36-1, ¶8. Mason continued to live in his rental home but, because he no longer worked for Defendants, his rental payments could not be deducted from his pay and he was not otherwise paying rent. *Id.* ¶¶19, 20. Defendants initiated eviction proceedings and Mason vacated the property. *Id.* ¶21. Once Mason left, Defendants discovered that Mason had caused damage to the property. *Id.* ¶22.

Defendants' counterclaims allege that Plaintiffs breached their lease agreement when they failed to return the properties in substantially as good a condition as when they received the property. *Id.* ¶¶7, 15. Defendants allege that Plaintiffs damaged the properties knowingly, willfully or negligently and that Mason committed criminal acts when he knowingly or willfully caused physical harm to both properties. *Id.* ¶¶ 8, 16, 38-39. Lastly, Defendants allege that Reed committed criminal acts when, after he was terminated, he contacted Pape and threatened him with serious physical harm and death. *Id.* ¶43; Doc. 36, p. 8. Their counterclaims allege state law claims of breach of contract, intentional or negligent damage to property (R.C. § 5321.05),

damage to property, and civil action for damages for criminal acts under R.C. § 2307, § 2909, and § 2903. Doc. 33, pp. 12-18.

## II. Legal Standard

This Court has federal question subject matter jurisdiction over Plaintiffs' complaint because the Amended Complaint alleges violations of the FLSA, 29 U.S.C. § 201, *et seq*. *See* 28 U.S.C. 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The Court has subject matter jurisdiction over Plaintiffs' related Ohio claims because the Ohio claims form part of the same case or controversy as the FLSA claims. *See* 28 U.S.C. 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

The issue before this Court is whether the Court has subject matter jurisdiction over Defendants' counterclaims under 28 U.S.C. § 1367(a), if the counterclaims form part of the same case or controversy as the Plaintiffs' claims; and whether, if not, the Court should exercise supplemental jurisdiction over the counterclaims pursuant to 28 U.S.C. § 1367(c).

## III. Analysis

In support of their assertion that the Court lacks subject matter jurisdiction over Defendants' counterclaims, Plaintiffs argue that the counterclaims are permissive rather than compulsory under Fed. R. Civ. P. 13. They also contend that the Court lacks supplemental jurisdiction over the counterclaims pursuant to 28 U.S.C. § 1367(a), and that the Court should decline to exercise supplemental jurisdiction over the counterclaims under § 1367(c).

5

**A. Defendants' counterclaims are permissive, not compulsory**

Federal Rule of Civil Procedure 13 provides that a compulsory counterclaim is one that must be brought if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). A permissive counterclaim is any claim that is not compulsory. Fed. R. Civ. P. 13(b). The Sixth Circuit applies the "logical relationship" test when determining whether a claim is compulsory or permissive. *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 277 (6th Cir. 1991). Under this test, the court decides "whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Id*.

In support of their argument that Defendants' counterclaims are permissive, not compulsory, Plaintiffs rely on *Wagoner v. N.Y.N.Y., Inc.*, 2015 WL 1468526 (S.D.Ohio March 30, 2015). In *Wagoner*, the plaintiffs brought an FLSA action challenging the defendant's characterization of them as independent contractors. *Id*. at *1. The defendant operated an adult entertainment club and the plaintiffs were dancers at the club. *Id*. They had entered into an "Entertainer Tenant Space Lease Application" whereby each dancer agreed to perform at the club, lease the space she performed in from the club, split the dance fees that she generated with the club, and retain all of the tips she earned. *Id*. The defendant's counterclaim alleged that, if the dancers were determined to be employees and not independent contractors, they would be obliged to return all fees earned dancing based on the fact that they had agreed that, if they were employees, the club would retain all dance fees. *Id*. at *2. In other words, the club would be entitled to a "set-off" based on their lease application depending upon whether the dancers were determined by the court to be employees or independent contractors. *Id*. at *2-3.

The court found that the club's counterclaims were permissive, not compulsory. *Id*. at *3. The court explained that the dancers' claims would focus on whether they were properly

6

classified as employees or independent contractors, how many hours a week they worked, and whether the fees they earned were service charges or tips. *Id*. The club's counterclaims, on the other hand, would "require investigation into the validity of the contract ... and whether Plaintiff breached that contact." *Id*. In other words, the claims would not accrue unless the dancers prevailed on their claims. As such, the counterclaims are "separate and independent from the claims" asserted by the dancers. *Id*.

Similarly, Defendants' counterclaims in this case are permissive, not compulsory. Plaintiffs' claims will focus on how many hours a week they worked, how much they were paid, whether they received their pay promptly or at all, and whether Defendants terminated Plaintiffs in retaliation for complaints regarding overtime pay—all based on federal or state law governing proper pay. Defendants' counterclaims, on the other hand, will require a determination as to whether the Plaintiffs returned their leased homes to Defendants in the proper condition, whether they intentionally or negligently damaged the houses, what Mason was obligated to pay under his lease and whether Plaintiffs committed criminal acts—all pursuant to Ohio landlord-tenant law or Ohio criminal statutes and all based on conduct that occurred after Plaintiffs were terminated.[4] These counterclaims do not raise the same issues of law and fact as Plaintiffs' claims and entirely different evidence would support or refute the counterclaims. *See Sanders, 936 F.2d at 277*. Accordingly, Defendants' counterclaims do not arise from the same transaction or occurrence as the subject matter in Plaintiffs' claims and are not, therefore, compulsory claims. *See id.*; Fed. R. Civ. P. 13(a). Nor are the counterclaims so related to Plaintiffs' claims

---

[4] For instance, Defendants allege that Reed threatened Pape after Reed was terminated, Doc. 36, p. 8, that Mason caused significant damage to the house Reed had been living in after Mason had "abandoned his employment with Pape," Doc. 36, p. 8, and that, after Mason quit his job, he continued to occupy his house and failed to make rental payments, Doc. 36, pp. 8-9. Moreover, Plaintiffs point out that Defendants' counterclaim alleging damage to the houses did not arise until after Plaintiffs' employment ended, Doc. 34-1, pp. 13-14, which Defendants do not dispute in their opposition brief.

7

"that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. 1367(a).

### B. The Court declines to exercise supplemental jurisdiction over Defendants' counterclaims

Pursuant to 28 U.S.C. 1367(c), a court may decline to exercise supplemental jurisdiction over a claim when: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the court has original jurisdiction; (3) the court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *Id*. "Although there appears to be no definitive test to determine whether state law predominates over federal claims, courts have considered such factors as whether they outnumber the federal law claims; whether the claims are distinct; and whether [the] state law claims involve proof that is not needed to establish the federal law claims." *Williamson v. Recovery Ltd. P'ship*, 2009 WL 649841, at *9 (S.D.Oh. March 11, 2009).

The Court declines to exercise supplemental jurisdiction over Defendants' counterclaims because it finds that, above all, Defendants' counterclaims substantially predominate over the Plaintiffs' wage claims. *Id*. In order to determine whether Plaintiffs' received proper pay, as their claims allege, the Court need only consider the housing provided to the extent it represents the amount of money that Defendants deducted from Plaintiffs' paychecks every month. All parties agree that Plaintiffs received a portion of their compensation in the form of decreased rental payments. Thus, the issues in dispute raised by Plaintiffs will involve an accounting of hours worked and compensation, including reduced rent, paid to Plaintiffs. In contrast, Defendants' counterclaims regarding the Plaintiffs' treatment of their rental properties accrued after the Plaintiffs' separated from Defendants' employment and are based on Ohio landlord-

8

tenant law. "Landlord-tenant disputes and eviction actions are typically state law claims." *MLS Holdings, Inc. v. Jones*, 2013 WL 1788480, at *2 (W.D.Ky April 26, 2013) (quoting *Westfield Club v. Dominique*, 2007 WL 2904051 (W.D.Mich. Oct. 1, 2007)); *United Mutual Houses, L.P. v. Andujar*, 230 F.Supp.2d 349, 354 (S.D.N.Y. 2002) ("It is appropriate for a federal court to abstain in landlord-tenant actions, as they involve complex questions of state law that bear on important state policy issues[,]" quoting *Soms v. Aranda*, 2001 WL 716945, at *1 (S.D.N.Y. June 26, 2001)). To determine whether Plaintiffs violated Ohio landlord-tenant law, the Court would be dragged into the unfamiliar neighborhood of property damage, eviction and breached lease agreements. It would have to consider whether Plaintiffs committed criminal acts, including one of threatening violence, which is unrelated to either the Plaintiffs' claims or landlord-tenant law. That would be a long, tortuous detour from an FLSA and Ohio wage law case.

In support of their assertion that their counterclaims are related to Plaintiffs' claims, Defendants cite to a U.S. Department of Labor Opinion Letter 2006-7, March 10, 2006 ("Letter"). Defendants contend that the FLSA "permits certain deductions from non-exempt employees' compensation for damage and loss of an employer's property that is caused by an employee." Doc. 36, p. 11. Defendants' assertion is not persuasive because the authority it cites does not support their contention. The Letter discusses whether an employer can deduct employees' pay to recover the cost of lost or damaged tools or equipment issued and used by employees to perform their jobs. Doc. 36-4. First, the housing units are not tools or equipment used by Plaintiffs to perform their jobs. Second, the Letter concludes that any such deduction would be improper.[5]

---

[5] Defendants also include the Department of Labor Field Operations Handbook (Doc. 36, p. 11; Doc. 36-4, pp. 4-8). Section 30c16 does not apply because it provides for deductions in non-overtime weeks "for articles that do not qualify as 'board, lodging, or other facilities.'" Doc. 36-4, p. 4. Section 32j08 merely states that an employer may deduct board, lodging and facilities before paying the employee, Doc. 36-4, p. 4, which is not disputed.

In further support of their argument that the Court should exercise supplemental jurisdiction, Defendants rely on *Frisby v. Keith D. Weiner & Assocs. Co*., 669 F.Supp.2d 863 (N.D.Ohio 2009).  In *Frisby*, an employee alleged FLSA and Ohio Prompt Pay Act claims.  *Id*. at 864.  The employer brought a counterclaim for money the plaintiff owed it pursuant to a promissory note.  *Id*.  The court, in its discretion, exercised supplemental jurisdiction over the claim.  *Id*. at 870-870.  *Frisby* is distinguishable from this case.  In *Frisby*, the employer loaned the employee money during her employment and the two entered into a contract whereby the loan would be repaid through paycheck deductions.  *Id*. at 866.  The agreement further provided that, if the employee separated from the employer, "any payroll funds due her would be applied toward the loan balance and that she would have full responsibility for any remaining balance." *Id*.  The employer alleged that the employee had not made any payments on the loan since she separated.  *Id*.  The loan agreement in *Frisby* was executed during the employee's employment, whereas here the actions giving rise to Defendants' counterclaims occurred after the employment relationship.  And the *Frisby* loan agreement was a simple contract dispute, whereas the facts surrounding Defendants' counterclaims extend well beyond such a simple accounting.

The Court finds *Pecore v. Jennie-O Turkey Store, Inc*., 990 F.Supp.2d 984 (D.Minn. 2014) to be more analogous to this case.  In *Pecore*, the employee, a farm manager, lived in housing on the employer's farm.  *Id*. at 987.  The employee brought federal and state law claims against the employer alleging that the employer discriminated and retaliated against her when it terminated her after she complained about the use of chemicals on the farm.  *Id*.  The employer asserted five state law counterclaims, "each stemming from her tenancy in Jennie-O's farmhouse: Breach of Contract [], Destruction of Real Property [], Willful and Malicious Destruction of Leased Residential Property [], and Conversion []." *Id*.  Specifically, the

employer alleged that the employee failed to vacate the house within 30 days, and that, upon reentry, the employer discovered that the employee had damaged the property, allegedly in retaliation for her termination. *Id*.  The court declined to exercise supplemental jurisdiction over the employer's counterclaims, explaining,

> Jennie–O's counterclaims do not raise the same issues of fact or law as Pecore's claims. At their base, both the claims and counterclaims stem from Pecore's employment with Jennie–O, but the factual similarities end there. While her employment is the reason Pecore lived in Jennie–O's housing, her conduct and treatment as an employee are not tied to her conduct as a tenant. Pecore's claims involve the terms and conditions of her employment as a farm manager, her job performance, her complaints to human resources and management, Thomas's subsequent treatment of her, Jennie–O's decision to terminate her employment, and the motivations behind that decision. None of these material facts is relevant to Jennie–O's counterclaims. The counterclaims involve the damage allegedly inflicted to its housing, the motivation behind the damage, the cost of repairs, the duration of her tenancy, and the terms of her lease.
>
> Moreover, there is no allegation that the terms of Pecore's employment were tied to her conduct as a tenant. For example, Jennie–O does not allege it terminated her employment because of her (alleged) deficiencies as a tenant. To the contrary, Jennie–O alleges Pecore destroyed its property in retaliation for terminating her employment. This allegation implies the claims and counterclaims do not even share a timeline—Pecore's claims involve events between the parties leading up to and culminating in the termination of her employment, and Jennie–O's counterclaims involve Pecore's conduct after her termination.
>
> Nor do the claims and counterclaims share issues of law. None of the elements of breach of contract, destruction of property, or conversion overlaps with elements of discrimination, retaliation, or whistleblowing. In sum, the claims and counterclaims do not raise the same—or even similar—issues of law or fact.

*Id*. at 988-989.  Here, too, Plaintiffs' claims concerning the propriety of their pay and termination are not tied to their conduct as tenants and do not share a timeline; in short, they do not raise similar issues of law or fact.

Finally, Defendants contend that, even if the relationship between the claims and counterclaims counsel against the Court exercising supplemental jurisdiction, the interest of judicial economy and fairness support the Court exercising supplemental jurisdiction because it

would be inefficient and burdensome to require multiple cases to adjudicate the issues raised in this case.  Doc. 36, p. 15.  The Court disagrees.  The only hint of "judicial economy and fairness" alleged in the briefing is the suggestion that Plaintiffs may be judgment-proof.  *See* Doc. 36, p. 16.  Defendants have not provided any legal authority indicating that a party's potential inability to collect on a judgment against another if it ultimately prevails in a case with completely unrelated claims is a compelling reason for a federal court to exercise supplemental jurisdiction over those claims.

In sum, the Court has not been persuaded by Defendants that it should exercise supplemental jurisdiction over the counterclaims alleged in this case.  Instead, all roads lead to one conclusion: Defendants' counterclaims are wholly unrelated to Plaintiffs' claims and the Court, in its discretion, declines to exercise supplemental jurisdiction over Defendants' counterclaims.  28 U.S.C. § 1367.

### IV. Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion to Dismiss Defendants' counterclaims (Doc. 34).  Defendants' counterclaims are hereby dismissed without prejudice.

IT IS SO ORDERED.

Dated:  September 28, 2016

_____
Kathleen B. Burke
United States Magistrate Judge